**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ANTONIO BROWN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-1405 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 9 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's motion for summary judgment.

Plaintiff Antonio Brown is an eighteen-year-old student protected by the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*.  Plaintiff initiated this action to

request an award of attorneys' fees and costs incurred while prosecuting administrative claims

under the IDEA.  Defendant, the District of Columbia, has filed a cross-motion for summary

judgment disputing the reasonableness of Plaintiff's request.  Because the Court determines that

part, but not all, of Plaintiff's request is reasonable, the Court will grant in part and deny in part

each party's motion and award fees and costs in the total amount of $31,340.75.

## II.  FACTUAL BACKGROUND

On September 20, 2013, Plaintiff filed an administrative due process complaint against

the District of Columbia Public Schools system ("DCPS"), alleging four violations of the IDEA.

*See* Hr'g Officer's Decision ("HOD"), ECF No. 7-3, Ex. 1 at 1, 3.  Plaintiff argued that DCPS

denied him the free appropriate public education ("FAPE") that the IDEA guarantees him based on the following infractions: (1) DCPS failed to identify, locate, and evaluate Plaintiff for special education and related services beginning in November 2011 when Plaintiff's parent visited his school to discuss the student's lack of progress; (2) DCPS did not timely evaluate Plaintiff after his parent requested an assessment in May 2013; (3) DCPS failed to provide prior written notice to Plaintiff's parent of its decision not to evaluate Plaintiff on August 8, 2013; and, (4) DCPS did not render Plaintiff eligible on August 8, 2013, for special education and related services, though Plaintiff had a specific learning disability and experienced emotional disturbance. *See* Compl., ECF No. 1-2, Ex. B at 16, 20-21, 29 ("Due Process Complaint"); *see also* HOD at 3.

After an administrative hearing that lasted one-and-a-half days, the hearing officer submitted a written order granting Plaintiff funding for tuition, counseling services, and transportation for School C from the date of the hearing officer's decision until DCPS could complete an initial evaluation of Plaintiff's entitlement to special education and related services. *See* HOD at 19.  The hearing officer additionally required DCPS to fund independent functional behavioral and psychiatric assessments of Plaintiff, as well as to conduct a speech-language evaluation, which the local educational agency recommended. *See id.* at 21-22.

Alana Hecht, Esq., represented Plaintiff throughout the administrative process. *See generally* Hecht Invoice, ECF No. 7-4, Ex. 2.  On August 17, 2014, Plaintiff filed a complaint with this Court, attaching an invoice for DCPS in the amount of $47,475.31 for attorneys' fees, paralegal fees, and costs. *See* Compl. ¶ 72.  Plaintiff and Defendant then filed cross-motions for summary judgment regarding the reasonableness of Plaintiff's invoice.  In particular, Defendant seeks a reduction in Plaintiff's requested fees on the bases that (1) Plaintiff has not proven that his attorney's rate is prevailing in the community, and Plaintiff therefore should receive 75% of

the fee rates in the *Laffey* Matrix, which is reserved for complex cases; (2) Plaintiff achieved limited success at the administrative hearing; and (3) work spent on Plaintiff's proposed suspension was not part of the due process complaint.  The Court now turns to the applicable legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standards

#### 1.  Summary Judgment

A party moving for summary judgment on legal fees must demonstrate prevailing party status and reasonableness of the fees requested, both in terms of hours spent and hourly rate. *Briggs v. District of Columbia*, No. 14-0002, 2014 WL 5860358, at *2 (D.D.C. Nov. 12, 2014). Pursuant to Federal Rule of Civil Procedure 56(a), a court will grant summary judgment if the movant shows that "'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56).  On the other hand, a court will grant summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

#### 2.  IDEA Fees Cases

A district court may reward "reasonable attorneys' fees" to a prevailing party under the IDEA.  20 U.S.C. § 1415(i)(3)(B).  In so doing, the Court follows a two-step inquiry: First, the Court must decide whether the party seeking attorneys' fees is the prevailing party;[1] and second,

---

[1] Defendant does not contest that Plaintiff is a prevailing party within the meaning of the

the Court must establish whether the fees requested are reasonable.  *See, e.g.*, *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014); *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).

The fairness of a plaintiff's request for attorneys' fees is based upon the number of hours devoted to litigation multiplied by the hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The plaintiff bears the burden of demonstrating that both of these factors are reasonable. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995).  A plaintiff can fulfill this duty by offering to the court the attorney's billing practices, skill, experience, and reputation, as well as the prevailing market rates in the relevant community.  *See McAllister*, 21 F. Supp. 3d at 100.  If the plaintiff provides sufficient and convincing evidence on these matters, the number of hours billed and the attorney's hourly rates are deemed reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing.  *See Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010); *see also Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004).  If both parties, however, do not provide adequate evidence demonstrating that the hourly rates are reasonable, the Court has discretion to determine the amount of that rate by reference to the *Laffey* Matrix.[2] *See McAllister*, 21 F. Supp. 3d at 100; *see also Santamaria v. District of Columbia*, 875 F. Supp. 2d 12, 20 (D.D.C. 2012).

---

IDEA.  *See McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 102 (D.D.C. 2014) (finding that plaintiffs may be deemed prevailing parties for attorneys' fees purposes if they succeed on any significant issue in litigation, which results in a benefit that the parties sought in bringing suit).

[2] The *Laffey* Matrix is a matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks.  The Civil Division of the United States Attorney's Office for the District of Columbia prepares the matrix for use when a "fee-shifting" statute permits the recovery of reasonable attorneys' fees.

**B.  Plaintiff's Requested Hourly Billing Rates**

Plaintiff urges the Court to adopt the *Laffey* Matrix when determining his attorney's

hourly rate.  *See* Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 7-1 at 15.  The purpose of

the *Laffey* Matrix is to determine the reasonableness of the fees sought.  *See McAllister*, 21 F.

Supp. 3d at 108.  Federal courts are not required to award *Laffey* rates but may rely on the

complexity of the case to establish whether such fees are warranted.  *See Flores v. District of*

*Columbia*, 857 F. Supp. 2d 15, 21 (D.D.C. 2012).  A plaintiff's burden in establishing a

reasonable hourly rate requires a showing of at least three elements: "the attorneys' billing

practices; the attorney's skill, experience, and reputation; and the prevailing market rates in the

relevant community."  *McAllister*, 21 F. Supp. 3d at 108 (citing *Covington v. District of*

*Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (finding that attorney's competency and

marketability are reflected in rate requested)).  Here, Plaintiff has submitted an affidavit

outlining his attorney's skill, experience, and reputation in special education law.  *See* Hecht

Aff., ECF No. 7-5, Ex. 3 ¶ 14 (asserting that attorney's firm won the largest relief possible,

private school placement, in multiple cases since opening in August 2012 and represents more

than 130 clients).  Plaintiff has not, however, adequately provided evidence showing that the

*Laffey* amount is the prevailing market rate.

While Plaintiff argues that this Court has awarded his attorney full *Laffey* rates in other

IDEA cases, *see* Hecht Aff. ¶ 37, there is no binding approach to determining what attorneys'

fees are proper in IDEA litigation.  *See Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 94

(D.D.C. 2012) ("[T]he mere showing that a high hourly rate was approved in another case does

not in and of itself establish a new market rate or prove that the new rate is reasonable.").

Plaintiff's attorney asserts in a supplemental affidavit that her clients have paid full *Laffey* rates

in the past,[3] *see* Hecht Suppl. Aff., ECF No. 10-3 at ¶¶ 1-2, but this fact alone is not sufficient to

show prevailing market rates in the District of Columbia for IDEA cases.  *See Rooths v. District*

*of Columbia*, 802 F. Supp. 2d 56, 62 (D.D.C. 2011) ("The Court is not persuaded that the

enhanced matrix proposed by the plaintiff reasonably approximates the rates that are charged in

the District of Columbia metropolitan area by lawyers litigating cases under the IDEA.").  By

failing to associate *Laffey* with the prevailing market rate, Plaintiff has not satisfied his burden.

### C.  Defendant's Request for the Court to Award Fees at 75% of *Laffey*

Defendant argues that Plaintiff's requested award should be reduced to 75% of the full

*Laffey* rates due to the case's lack of complexity.  *See* Mem. in Supp. of Def.'s Mot. for Summ.

J., ECF No. 9-1, at 9.  *Laffey* rates represent presumptive *maximum* rates for *complex federal*

*litigation*.  *See McAllister*, 21 F. Supp. 3d at 108.  This Court relies on the following factors to

ascertain the difficulty of the case and, as an extension, the reasonableness of attorneys' fees

under the *Laffey* Matrix: "(1) the length of the administrative hearing; (2) the number of

documents and witnesses presented at the administrative hearing; (3) the amount of discovery

required; (4) the presence of novel legal issues; (5) the quantity of briefing required; and (6) the

use of expert testimony."  *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 247 (D.D.C.

2012).  Here, Defendant offers evidence of the length of the administrative hearing and the

absence of prehearing interrogatories, discovery, and depositions to support its argument that

Plaintiff is entitled to an amount 25% below the full *Laffey* rates.  *See* Mem. in Supp. of Def.'s

---

[3] Hecht's affidavit on this point is conclusory and offers no specific facts from which the Court might determine whether her charged rate should be considered the market rate.  For instance, of her more than 130 clients, *see* Hecht Aff. ¶ 14, Hecht provides no details regarding how many clients have paid these rates, in what timeframe these rates were paid, and under what terms and conditions.  Without such basic factual information, her affidavit is of little use in determining the market rate.

Mot. for Summ. J. at 5.  For the reasons explained next, the Court agrees and concludes that the case at hand did not involve the type of complex issues of law and fact for which the full *Laffey* rates should be employed.

In particular, the administrative hearing took one-and-a-half days, during which Plaintiff admitted, without objection, twenty-eight exhibits and called seven witnesses—four of whom were Plaintiff, his parent, the law firm's paralegal, and the law firm's educational advocate.  *See* HOD at 24-26.  DCPS, on the other hand, admitted sixteen exhibits and called only three witnesses.  *See id.* at 24, 27.  Further, no novel or contested legal questions were briefed or resolved at the administrative level, and Hecht's billed activities consisted primarily of routine processes such as formulating the complaint and preparing for the prehearing conference, the hearing, and the post-hearing individualized education program ("IEP") meeting, which the hearing officer mandated.  *Compare Crawford v. District of Columbia*, No. 11-174, 2012 WL 1438985, at *3 (D.D.C. Apr. 26, 2012) (finding that IDEA litigation was not complex when a majority of attorneys' fees requested were due to counsel planning for routine administrative hearings), *with A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 49 (D.D.C. 2012) (noting that case was neither "uncomplicated" nor "straightforward" when it spanned four days, involved 105 exhibits, testimony of ten witnesses, and concerned intricate legal issues regarding plaintiff's disability and placement).  In other words, this case followed the customary path for such administrative IDEA matters, with Plaintiff filing a complaint, both parties attending an administrative hearing, the hearing officer releasing an order, and compliance on the part of Plaintiff and Defendant.  Based upon this record, the Court finds that the administrative proceeding was not sufficiently complex to warrant awarding the full *Laffey* rates.[4]

---

[4] The Court notes that the administrative case below did not involve contested legal

When the underlying administrative proceeding in an IDEA matter does not concern complex matters, courts in this Circuit often have awarded 75% of the full *Laffey* rate for legal work completed. *See, e.g.*, *Haywood v. District of Columbia*, No. 12-1722, 2013 WL 5211437, at *6 (D.D.C. Aug. 23, 2013). Likewise, the Court finds here that there is sufficient case law to support Plaintiff's award for attorney's and paralegal's fees equivalent to 75% of the *Laffey* rate. *See McNeil v. Options Public Charter School*, No. 12-0529, 2013 WL 791199, at *10 (D.D.C. Mar. 1, 2013) (granting Hecht fees totaling 75% of *Laffey* rates in non-complex IDEA case); *Moss v. District of Columbia*, No. 11-994, 2012 WL 4510682, at *3 (D.D.C. July 12, 2012) (same). Because Hecht continues to handle IDEA cases despite this Court on multiple occasions awarding her fees equaling 75% of *Laffey* rates, these rates presumably must be adequate to attract competent counsel. *See Heller v. District of Columbia*, 832 F. Supp. 2d 32, 48 (D.D.C. 2011) (finding that a reasonable hourly rate is one that is able to attract competent attorneys). This Court therefore deems that an award equaling 75% of the *Laffey* rate is proper for Plaintiff.

Accordingly, the Court will adjust Plaintiff's attorney's requested rates based on her experience according to the *Laffey* Matrix, before further reducing these rates (and the paralegal's rates) by 25% due to the non-complex nature of the IDEA matter. Thus, because

---

issues. Instead, it simply required the application of case-specific facts to a well-established legal framework. The application of facts to a well-established legal framework is not dissimilar to the work of court-appointed criminal defense attorneys who are compensated at an hourly rate of $127.00. *See* CJA Appointment Guidelines, Vol. 7, Part A, Ch. 2, § 230.16, *available at* http://www.uscourts.gov/FederalCourts/AppointmentOf Counsel/CJAGuidelinesForms/vol7PartA/vol7PartAChapter2.aspx#2302310. Criminal defendants are able to secure competent counsel at that rate, which is the governing criterion for determining the applicable market rate. *See Lewis v. Coughlin*, 801 F.2d 570, 573, 576 (2d Cir. 1986) (finding that "an attorney's fee award should be only as large as necessary to attract competent counsel" and collecting cases in other sorts of federal litigation in which fees awarded "are adequate to attract competent counsel, but which do not provide windfalls to attorneys"). Although court-appointed criminal defense counsel are guaranteed payment whether or not their client prevails, their hourly rate stands in stark contrast to the full *Laffey* rates sought here.

Plaintiff's attorney did not enter the "8-10-year" *Laffey* bracket until June 1, 2013, *see* Hecht Aff. ¶ 38, her work prior to that date must be billed according to the appropriate *Laffey* Matrix rate in the "4-7-year" category, which at the time was $290.  *See Laffey* Matrix, ECF No. 7-6, Ex. 4. Accordingly, for hours billed between 2013 and 2014, the hourly rates under the *Laffey* Matrix are as follows: Alana Hecht: $290 (May 1, 2013-June 1, 2013), $360 (June 1, 2013-August 13, 2014); and Chithalina Khanchalern (paralegal): $145 (2013-2014).[5]  The Court then will reduce the total amount billed by 25%.

### D.  Defendant's Request to Reduce Plaintiff's Award for Limited Success

Defendant next contends that the attorney's and paralegal's fees should be reduced further to account for Plaintiff's limited success on the merits.  *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 9-10.  For partially prevailing parties, "the degree of the plaintiff's overall success goes to the reasonableness of the award."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. District*, 489 U.S. 782, 793 (1989).  It is within a court's discretion to reduce the overall fee award to reflect that degree of success, regardless of whether the total number of hours expended was reasonable.  *Hensley*, 461 U.S at 436 (noting that fee-shifting statute does not authorize award whenever "conscientious counsel tried the case with devotion and skill" because "the most critical factor is the degree of success obtained").  There is no definitive rule for rendering these decisions.  The district court may try to determine specific hours that should not be included, or it may lower the award to account for partial success.  *See id*. at 436-37.  The Court in *Hensley* did, however, explicitly reject a default "mathematical approach" in determining the reduction amount of a fee award.  *See id*. at 435 n.11.

---

[5]     Defendant does not dispute that Khanchalern was properly billed at the *Laffey* rate for paralegals.

Here, Defendant argues for the very "mathematical approach" that the *Hensley* Court renounced by seeking a 50% reduction based on Plaintiff's success on two of four administrative claims. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 10. *Hensley*, though, requires a more holistic assessment of the relief sought, and this Court makes that evaluation next. *See Hensley*, 461 U.S. at 434 (appropriate inquiry is "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"); *see also Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 121 (D.D.C. 2010) (demonstrating court's discretion and taking "holistic" approach to reducing reward for partial success).

In *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014), this Court explained that "[w]hen determining how to reduce fee awards for partially successful plaintiffs, the court must analyze the relationships among[] the successful and unsuccessful claims." *Id*. at 102 (citing *Hensley*, 461 U.S. at 434-35). "If the claims 'involve a common core of facts,' or are based on 'related legal theories,' '[m]uch of counsel's time will likely be devoted to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis.'" *Id.* (quoting *Hensley*, 461 U.S. at 435). Initially here, it is undisputed that Plaintiff received less than all of the relief he sought at the administrative level, so a reduction in fees is justified. *See* Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., ECF No. 10-1, at 19 (conceding that Plaintiff did not get requested reimbursement for tuition to School C but did get tuition funding from the time of the hearing officer's decision to the date DCPS makes an eligibility determination of Plaintiff, and that Plaintiff was awarded a number of evaluations but not every single one sought).

After reviewing the record of this case, the Court finds that many of the underlying issues are interrelated and cannot be easily separated by claim; the Court therefore will not divide the hours on a claim-by-claim basis but instead will reduce the full award amount by taking a

holistic approach that looks at the claims brought and the overall relief received.  *See* Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J. at 20-21 (explaining that "[t]here is no way to identify any work that was done in requesting the evaluations that were not awarded from the ones that were awarded," and "there was no work that was done only for the reimbursement request that did not need to be done for the prospective placement claim"); *see also McAllister*, 21 F. Supp. 3d at 103 ("A certain amount of the work performed in any case is performed for all claims, and cannot be so easily sub-divided.").  Indeed, this Court undertook a similar analysis in *McAllister*, when, after finding that the underlying issues were too "interrelated" to be divided on a claim-by-claim basis, the Court proceeded to engage in a qualitative, holistic assessment of the relief the plaintiff received.  *See id.*

Here, Plaintiff sought relief for DCPS's denial of the FAPE for the following violations: (1) DCPS failed to identify, locate, and evaluate Plaintiff for special education and related services beginning in November 2011; (2) DCPS failed to timely assess Plaintiff after his parent made a request in May 2013; (3) DCPS failed to provide prior written notice of its decision not to evaluate Plaintiff on August 8, 2013; and (4) DCPS did not find Plaintiff eligible for special education and related services despite his specific learning disability and emotional disturbance. *See* HOD at 3.  For these infractions, Plaintiff requested (1) reimbursement for tuition for School C from August 26, 2013, until the date of the hearing officer's decision; (2) funding for School C until DCPS evaluates Plaintiff's eligibility for special education and related services; (3) independent comprehensive psychological, vocational, speech-language, psychiatric, neurological, and functional behavioral assessments; (4) a meeting with DCPS within thirty days of Plaintiff's last evaluation to establish an IEP and behavior intervention plan ("BIP") for Plaintiff; and (5) compensatory education.  *See id.* at 18, 21.

After reviewing the four administrative claims, the hearing officer granted Plaintiff the following relief: tuition funding, fees for counseling services, transportation to School C from the date of her decision until DCPS further evaluated Plaintiff, and independent speech-language, psychiatric, and functional behavioral assessments (which was three of the six requested evaluations). *See id.* at 19, 21-22.  The hearing officer deemed unnecessary the three tests not afforded to Plaintiff because: first, DCPS conducted a psychoeducation assessment in February 2012, rendering another psychological evaluation excessive; second, DCPS did not identify Plaintiff as having a disability and he therefore did not require a vocational test; and third, Plaintiff's claim about a head injury in February 2012 was made during an interview in which he was found to be "untruthful," which would have spurred a neurological exam.  *See id.*

Further, in accordance with Plaintiff's request, the hearing officer also required DCPS to hold a meeting with Plaintiff ten days after Plaintiff's final evaluation to determine whether he is in fact entitled to special education and related services, an IEP, and a BIP.  *See id.* at 22-23.  Thus, Plaintiff received all of the relief he sought with the exception of a partial reimbursement for tuition, three assessments, and an order for compensatory education.  *See id.*  Both the vocational evaluation and instruction for compensatory education, however, are contingent on his eligibility for special education and related services, which DCPS will establish after conducting additional assessments.  *See id.*

Although the hearing officer found that Plaintiff did not meet his burden on two of the issues presented, one of those issues was a procedural violation that did not affect Plaintiff's substantive rights under the IDEA—specifically, DCPS's failure to give prior written notice when it decided that Plaintiff was not eligible for special education and related services.  *Cf. McAllister*, 21 F. Supp. 3d at 103 (discounting declaratory requests as derivative of substantive

rights); *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006)

(rejecting IDEA claim based on a procedural violation because it did not concern a substantive

deprivation of plaintiff's rights); *see* HOD at 11-12.  The Court therefore finds this loss to be *de*
*minimis*.

   Similarly, the dismissal of the second claim—that DCPS deprived Plaintiff of a FAPE on

August 8, 2013, by not finding him eligible for special education and related services due to

emotional disturbance and a specific learning disability—was not a complete denial, since DCPS

found Plaintiff eligible after the evaluation process mentioned above.  *See* HOD at 22-23; *see*
*also* Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J. at 21-22.  By granting Plaintiff

additional evaluations, the hearing officer left open the possibility for Plaintiff to obtain further

relief at a later date based on a set timeline.  *See* HOD at 22-23.  Indeed, based upon the

assessments the hearing officer initially awarded, Plaintiff ultimately became entitled to the IEP,

compensatory education, and additional evaluations—all of which are favorable to him.  *See*
Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J. at 22.

   Further, while Plaintiff was not awarded a reimbursement of tuition for School C,

Plaintiff has not suffered a financial loss from his enrollment because School C did not request

payment from him.  *See id.* at 20-21.  Indeed, the hearing officer's denial appears to be based on

the fact that School C accepted Plaintiff without conditioning his attendance on an agreement

that his parents would pay—a fortuity rather than a lack of merit of Plaintiff's claim.  The

hearing officer also found that School C was suitable for Plaintiff, a substantial win for him, *see*
*id.* at 18, 21, and granted Plaintiff funding for his tuition, counseling services, and transportation

to School C from the date of the hearing officer's order until DCPS evaluates whether Plaintiff is

eligible for special education and related services.  *See id.* at 19.  The Court therefore will reduce

the award of attorneys' fees only based on Plaintiff's partial lack of success and not based on the

hearing officer's denial of a reimbursement.

Given that Plaintiff prevailed on the most important aspects of his claims and the *de*

*minimis* nature of his procedural loss, the Court will exercise its broad discretion to reduce the

total fees award for Hecht and her paralegal by 10% for partial success, even though Plaintiff

technically lost on two of four claims at the hearing.  *See Hensley*, 461 U.S. at 436-37 (focusing

on the overall relief obtained).  To reiterate, of Plaintiff's two unsuccessful requests for relief,

only one was substantive—that of denying Plaintiff eligibility for special education and related

services.  The other unsuccessful claim was merely a request for declaratory relief—not any

substantive relief that affected Plaintiff's actual educational placement or rights.  However,

because DCPS may not find Plaintiff eligible at the scheduled MDT meeting, even after the

required assessments are given, a reduction by 10% is suitable.  *See id.*

### E.  Defendant's Request to Reduce Plaintiff's Award for Time Spent on a Potential Suspension

Finally, Defendant argues that the charges in Plaintiff's invoice concerning a potential

long-term suspension should not be included in any fees award because this issue was not part of

the due process complaint.  *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 11.  While the

Court does not condone hypercritical challenges to requests for attorneys' fees, Plaintiff

nonetheless has the burden of showing that each time entry is associated with a specific hearing.

*See Cox v. District of Columbia*, 754 F. Supp. 2d 66, 78 (D.D.C. 2010).  Here, from May 16,

2013, to May 23, 2013, Plaintiff's attorney invoiced communications with Plaintiff's community

based intervention ("CBI") worker, parent, and DCPS relating to DCPS's proposal for Plaintiff's

suspension.  *See generally* Hecht Invoice at 5-10.  While Plaintiff's attorney attempted to arrange

a Manifestation Determination Review ("MDR") meeting about the potential suspension, DCPS ultimately cancelled the conference and never ordered the suspension, thus posing no issue for the hearing officer to resolve. *See id.* at 5, 9.

Plaintiff argues that documentation from the student's proposed suspension was used in the case and contributed to the hearing officer's favorable decision. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. at 24. The hearing officer, however, makes no mention of the suspension issue in the findings of fact and conclusions of law, nor did Plaintiff make any specific claim relating to the suspension at the administrative level. Indeed, despite Plaintiff's suggestion to the contrary, he fails to cite anywhere that information or records concerning the proposed suspension were used in the administrative process. As a result, when charges lack a meaningful relationship to a hearing, courts may lower an award for attorneys' fees. *See Santamaria*, 875 F. Supp. 2d at 18. Because Plaintiff has failed to meet his burden of demonstrating how the proposed suspension was related in any way to the administrative hearing, the Court will reduce Plaintiff's award of fees by the time reflected in the entries from May 16 to May 23, 2013, that relate to the suspension.[6]

### F. Plaintiff Should Be Awarded Total Fees and Costs Equivalent to $31,340.75

Applying the above calculations, Hecht's and her paralegal's total fees are $30,977.44.[7] Plaintiff also seeks to recover costs from the administrative action in the amount of $363.31, and

---

[6] These entries on Hecht's invoice begin with "Phone call from the student's CBI worker . . ."; end with "Per attorney's request, phone call to parent informing her that today's meeting is being cancelled. . . .," Hecht Invoice at 5-10; and exclude one charge during this time because it was not related to the suspension, which begins "Receive and review evaluation that was completed by the court . . ." *Id.* at 9.

[7] The Court uses the *Laffey* Matrix as a starting point, reduces those rates by 25% due to the lack of complexity, and then multiplies those reasonable rates by the hours billed (excluding the suspension hours). Before June 1, 2013, Hecht's total labor time was 6.6 hours, which is multiplied by the reasonable hourly rate of 75% of *Laffey*, $217.50, to yield a total charge of

Defendant does not object to this amount.  The typical rate for faxing and photocopying in this district is $0.15 per page, and that is what Plaintiff seeks here.  *See Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 81-82 (D.D.C. 2012); *see generally* Hecht Invoice.  Plaintiff further requests costs for postage and parking for his attorney, paralegal, and he to attend the due process hearing.  *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. at 27.  These fees have been awarded in the past, and are granted here.  *See Johnson*, 850 F. Supp. 2d at 81.  Accordingly, the total award for Plaintiff is $31,340.75.

### G.  Post-Judgment Interest

Plaintiff also requests that the Court order Defendant to pay $2,000 for every month that payment is delayed, but Plaintiff does not cite any example of a court in this Circuit ordering such a severe penalty at this stage of litigation.  *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. at 28.  Instead, the Court will award post-judgment interest pursuant to 28 U.S.C. § 1961(a), which permits interest to be ordered on "any money judgment in a civil case recovered in a district court . . . from the date of the entry of the judgment."  *See also Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 (D.D.C. 2004); *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 48 (D.D.C. 2004).

---

$1,435.50.  After June 1, 2013, Hecht's total labor billed was 104.4 hours, and at the reasonable 75% *Laffey* hourly rate of $270, the total charge is $28,188.  Her paralegal's reasonable hourly rate at 75% *Laffey* is $108.75, multiplied by the paralegal's 44.1 hours billed, which equals $4,795.88.  Together, the total cost for attorney's and paralegal's fees is $34,419.38.  The Court then reduces that award by 10% for partial success.

**IV.  CONCLUSION**

For the foregoing reasons, this Court grants in part and denies in part Plaintiff's motion

for summary judgment and Defendant's cross-motion for summary judgment.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 19, 2015                                    RUDOLPH CONTRERAS
                                                             United States District Judge